**FEDERAL COMMUNITY DEFENDER OFFICE**
**EASTERN DISTRICT OF MICHIGAN**
**613 Abbott St., 5th Floor**
**Detroit, MI  48226**

*Telephone:* (313) 967-5542  ▪  *Fax:* (313) 962-0685

**MIRIAM L. SIEFER**
**President/Chief Executive Officer**
**Federal Community Defender**
**Office**

**BRANDY Y. ROBINSON**
**Deputy Defender**

**(313) 967-5542**

August 7, 2019

Hon. Stephen Murphy
United States District Court
Eastern District of Michigan
231 W. Lafayette Blvd, Room 216
Detroit, Michigan 48226

      Re:  *United States v. Willie Bellamy*
          Case No. 10-20437

Dear Judge Murphy:

Tomorrow, this Court will resolve the charges pending against my client, Willie Bellamy, for his alleged violations of supervised release.  I expect Mr. Bellamy to admit responsibility for the violations and will ask the Court to proceed immediately to sentencing.

The purpose of this letter is to support what will be my in-court request for a sentence of **one day incarceration, with credit for time served, and no period of supervision to follow.**

Back in 2010, Mr. Bellamy began serving what was supposed to be a 6-year term of supervised release.  He reported to his probation officer as directed, and though he struggled a bit with restitution payments, he was otherwise in compliance with his bond conditions.

It was clear as early as 2015, however, that Mr. Bellamy had serious ongoing medical conditions.  So severe were his ailments that the supervising agent at the time, Brenda Moore, had considered petitioning the Court for early termination.  Quite regrettably though, Mr. Bellamy found himself caught up in new and serious allegations that he conspired with his son and others to distribute heroin in the state of Minnesota.

A review of district court records in the Minnesota case reveals several facts that are relevant to this Court's sentencing assessment.  One of the first is that Mr. Bellamy's son, Omar Sharif Beasley, was the lead defendant in the case.  (Exhibit A, Face of D. Minn. Indictment).

Another is that in the view of the Minnesota District Judge responsible for sentencing Mr. Bellamy, a downward variance was warranted in part because of the "undue influence of [Bellamy's] son contributing to [Bellamy's] criminal conduct."  (Exhibit B, Order Granting Motion for Compassionate Release and Reduction in Sentence, Page 1).  To understand the

rationale behind this finding, the Court can look to the sentencing memo filed by the federal defense attorney there, who noted that:

(1) "Mr. Bellamy's son was in danger if he did not find a source of heroin,";
(2) "Mr. Bellamy did not want his son to be seriously injured or possibly murdered[,] so he helped him locate a source . . . ."; and
(3) "Mr. Bellamy's involvement in the offense was limited in both scope and duration."

(Exhibit C, Defense Position With Respect to Sentencing).

The final, and perhaps most significant fact that this Court can consider is relates to Mr. Bellamy's health.  Back in May of 2016 when the violation petition was first filed, the supervising agent raised significant concerns about Mr. Bellamy's health conditions, which included "diabetes, hypertension, heart disease, severe degenerative joint disease, Gout, mild mental retardation, and other ailments." (Violation Report Part 2).   In the three years that have elapsed since that time, Mr. Bellamy's conditions have only worsened.  In fact, the sentencing Court in Minnesota has grown so concerned about Mr. Bellamy's decline that it recently granted the client's *Pro Se* request for a First Step Act compassionate release.  (Exhibit B, Compassionate Release Order).

Counsel will not bog the Court down with the details here, except to cite the following excerpt from that order:

Bellamy's medical history includes the following diagnoses:  acute combined systolic and diastolic ACC/AHA stage C congestive heart failure, atherosclerosis, diabetes mellitus Type 2, chronic diabetic kidney disease, hypertension, hyperlipidemia, esophageal reflux, sleep apnea, osteoarthritis, and asthma.  The BOP's health services staff describe many of Bellamy's health problems as "chronic in nature and . . . directly related to and/or accelerated by the aging process."

Bellamy claims that he needs assistance getting to the bathroom, taking a shower, getting dressed, making phone calls, using the computer, and "almost every single basic thing that [he] need[s] to do to complete a day."  He also claims that he is confined to a wheelchair or his bed for more than 50% of the time he is awake.  His claims are supported by his medical records.

(Exhibit B, Compassionate Release Order at page 8).

For similar reasons, Mr. Bellamy asks the Court to terminate his supervision and sentence him to a penalty of one-day in custody, with credit for time served.

It is clear that Mr. Bellamy's medical needs have reached a critical point.  Under the terms of the compassionate release order, he will remain in the care of the BOP until August 31, 2019, after which time he will transition home to live out the rest of his days with his wife, Brenda Fagan.  During that time, he will remain under Court supervision to Minnesota (with care transferred here to the Eastern District of Michigan) until the year 2025.

Mr. Bellamy acknowledges that his conduct here was dead wrong and he does not seek to excuse it. This is one of those rare cases, however, where the Court's need for justice can justifiably be tempered with complete mercy.

The requested sentence will be sufficient, but not greater than necessary, to achieve all of the goals of 18 U.S.C. § 3553(a), and Mr. Bellamy asks for the Court to punish him accordingly.

Sincerely,

**FEDERAL DEFENDER OFFICE**

*Brandy Y. Robinson*

Brandy Y. Robinson
Deputy Defender

BYR/
Attachments

**Exhibit A**
**(Face of Minnesota Indictment)**

UNITED STATES DISTRICT COURT
District of Minnesota

| | |
|---|---|
| UNITED STATES OF AMERICA, | **INDICTMENT** CR15-165 JRT/LIB |
| Plaintiff, | 18 U.S.C. § 2 |
| | 18 U.S.C. § 922(a)(6) |
| v. | 18 U.S.C. § 924(a)(2) |
| | 18 U.S.C. § 924(c) |

(1)   OMAR SHARIF BEASLEY,  
(2)   WILLIAM DAVID ALONZO,  
(3)   TRAVIS JAMES BAKER,  
(4)   ROSE LYNN BARRETT,  
(5)   SONNIE MARIE BARRETT,  
(6)   CALVIN (NMN) BEASLEY,  
(7)   TIMOTHY JOSEPH BEAULIEU, JR.,  
(8)   WILLIE (NMN) BELLAMY, JR.,  
(9)   LAMARCUS ANTONIO BROCK,  
(10)  MICHAEL TRAVELL COLLINS,  
(11)  MICHAEL JOSEPH DOMINGUEZ,  
(12)  STACEY RAE DUCHAINE,  
(13)  ERNESTINE (NMN) DUKES,  
(14)  MICHAEL LENIOR DUKES,  
(15)  BRENDA ANN FAGAN,  
(16)  WILLIAM JAMES FASTHORSE,  
(17)  APRIL MARIE GRAVES,  
(18)  STEPHEN MARTIN HOLLIS,  
(19)  YALONZO RAMON HULL,  
(20)  DURIAL JOHN JACKSON,  
(21)  JUSTIN LEE JOHNSON,  
(22)  VELVET ILENE JOHNSON,  
(23)  GENE MICHAEL KEEZER,  
(24)  NAKOYA HARRIS KEEZER,  
(25)  RODNEY LEE KEEZER,  
(26)  JARVIS ALLEN KING,  
(27)  JODI LYNN KJOLBERG,  
(28)  YVETTE (NMN) KOUAYARA,  
(29)  JENNIFER LYNN OPPEGARD,  
(30)  JESSICA RAE OPPEGARD,  
(31)  LEE ALLEN OPPEGARD,  
(32)  BURNEY ABDULAH PEOPLES,  
(33)  CHRISTOPHER ERVING PEOPLES,  

18 U.S.C. § 924(d)(1)  
21 U.S.C. § 841(a)(1)  
21 U.S.C. § 841(b)(1)(A)  
21 U.S.C. § 841(b)(1)(B)  
21 U.S.C. § 841(b)(1)(C)  
21 U.S.C. § 846  
21 U.S.C. § 853  
28 U.S.C. § 2461(c)  

MAY 2 0 2015

U.S. DISTRICT COURT MPLS

**Exhibit B**
**(Compassionate Release Order)**

# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

UNITED STATES OF AMERICA,

Plaintiff,

v.

WILLIE NMN BELLAMY, JR.,

Defendant.

Civil No. 15-165(8) (JRT/LIB)

**ORDER GRANTING MOTION FOR COMPASSIONATE RELEASE AND REDUCTION IN SENTENCE**

Erica H. MacDonald, United States Attorney, and Deidre Y. Aanstad, Assistant United States Attorney, **UNITED STATES ATTORNEY'S OFFICE**, 300 South Fourth Street, Suite 600, Minneapolis, MN 55415, for plaintiff.

Willie NMN Bellamy, Jr., No. 42134-039, Federal Correctional Institution – Elkton, P.O. Box 10, Lisbon, OH 44432, *pro se* defendant.

Defendant Willie Bellamy, Jr., pled guilty to conspiracy to distribute heroin, and the Court sentenced him to 60 months imprisonment and four years of supervised release on June 30, 2017. (Sentencing J. at 1-2, June 30, 2017, Docket No. 2393.) The 60-month sentence was the mandatory minimum but a downward variance from the guideline range. (SOR at 1, 4, June 30, 2017, Docket No. 2394.) The Court varied downward in part because of Bellamy's age (69) and poor health. (*Id.* at 3-4.) The Court also noted that one of the convictions qualifying Bellamy for career offender status was more than 25 years old and considered the "undue influence of [Bellamy's] son contributing to [Bellamy's] criminal conduct." (*Id.* at 4.)

Bellamy is now 71 years old and is incarcerated at Federal Correctional Institution ("FCI") – Elkton. (*Id.*; Mot. for Com. Release & Reduced Sentence ("Mot."), Jan. 8, 2019, Docket No. 2776.)  He continues to suffer from serious health issues.  (Mot. Ex. 8, Jan. 8, 2019, Docket No. 2776-8.)  He is confined to a wheelchair, has heart problems, suffers from diabetes, and suffers from a chronic diabetic kidney disease, among other conditions. (Mot. Ex. 8; Mot. Ex. B, Jan. 8, 2019, Docket No. 2776-3.)  Bellamy moves this Court to grant him compassionate release and a reduction in sentence under 18 U.S.C. § 3582(c)(1)(A) because of his age and serious health conditions.[1]

The Court will find that extraordinary and compelling circumstances warrant compassionate release in Bellamy's case due to his serious and worsening health problems. The Court will thus grant Bellamy's motion, reduce his term of imprisonment to time served effective August 30, 2019, and increase Bellamy's term of supervised release to the unserved portion of his previous term of imprisonment in addition to the four years previously imposed.

## DISCUSSION

Before passage of the First Step Act of 2018, a sentencing court could only consider compassionate release upon a motion from the Director of the Bureau of Prisons ("BOP").

---

[1] Consistent with the relevant Bureau of Prison's Program Statement, the Court uses the terms "compassionate release" and "reduction in sentence" interchangeably.  *See* Program Statement 5050.50, Compassionate Release/Reduction in Sentence: Procedures for Implementation of 18 U.S.C. §§ 3582 and 4205(g) at 1, https://www.bop.gov/policy/progstat/5050_050_EN.pdf.

*United States v. Beck*, No. 1:13-CR-186-6, 2019 WL 2716505, at *4 (M.D.N.C. June 28, 2019) (citing Pub. L. No. 98-473, Ch. II(D) § 3582(c)(1)(A) 98 Stat. 1837 (1984)). The BOP's decision not to file such a motion was judicially unreviewable. *Id.* In February 2016, the United States Sentencing Commission held a public hearing on compassionate release.[2] Following concerns that the BOP "ha[d] failed to use its authority to recommend compassionate release in the past," the Sentencing Commission passed amendments to the federal sentencing guidelines that "strengthened and broadened the criteria for compassionate release."[3] In a press release by the Sentencing Commission announcing the amendments, the Commission's Chair, Judge Patti Saris, encouraged the BOP "to use its discretion consistent with [the Sentencing Commission's] new policy so that eligible applications [could be] reviewed by a trial judge."[4]

Through the First Step Act, Congress provided a mechanism for courts to review the BOP's refusal or failure to move for compassionate release, further expanding defendants' access to the relief. *See* First Step Act of 2018, PL 115-391, December 21, 2018, 132 Stat. 5194, 5239. In a section entitled "Increasing the Use and Transparency of Compassionate Release," the First Step Act amended 18 U.S.C. § 3582(c)(1)(A) to allow a sentencing court to reduce a term of imprisonment "upon motion of the Director of the

---

[2] *See* United States Sentencing Commission, *Public Hearing on Compassionate Release and Conditions of Supervision* (February 17, 2016), https://www.ussc.gov/policymaking/meetings-hearings/public-hearing-february-17-2016.

[3] United States Sentencing Commission, *U.S. Sentencing Commission Approves Significant Changes to the Federal Sentencing Guidelines* (April 15, 2016), https://www.ussc.gov/about/news/press-releases/april-15-2016.

[4] *Id.*

[BOP], **or upon motion of the defendant** after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." *Id*.; 18 U.S.C. § 3582(c)(1)(A) (emphasis added).

Before reducing a defendant's term of imprisonment, a sentencing court must do three things: (1) find that "extraordinary and compelling reasons warrant such a reduction"; (2) find that the reduction "is consistent with applicable policy statements issued by the Sentencing Commission"; and (3) consider the statutory sentencing factors set forth in 18 U.S.C. § 3553(a). 18 U.S.C. § 3582(c)(1)(A).[5]

Bellamy requested compassionate release by the BOP under the criteria for "debilitated medical conditions" and "elderly inmates with medical conditions," but the BOP denied his request. (Mot. Ex. A at 1-2, Jan. 8, 2019, Docket No. 2776-1.) The United

---

[5] The United States argues that the Sentencing Commission's Policy Statement regarding compassionate release/reduction in sentence is binding on the Court. However, other courts disagree, finding that the statement is no longer applicable because it predated—and conflicts with—the First Step Act. *See Beck*, 2019 WL 2716505, at *5 ("There is no policy statement applicable to motions for compassionate release filed by defendants under the First Step Act. By its terms, the old policy statement applies to motions for compassionate release filed by the BoP Director and makes no mention of motions filed by defendants."); *United States v. Cantu*, No. 1:05-CR-458-1, 2019 WL 2498923, at *3 (S.D. Tex. June 17, 2019) (Sentencing Commission's Policy Statement is not binding on the court because Congress overrode the statement in passing the First Step Act).

The Court need not determine whether the Sentencing Commission's Policy Statement is binding because resolution of the question does not affect the outcome of Bellamy's motion. Reducing Bellamy's sentence is consistent with the Sentencing Commission Policy Statement regarding sentence reduction. Thus, the Court would grant Bellamy's Motion whether the statement was binding or merely provided helpful guidance.

States argues that the BOP's decision was correct and that the Court should likewise find that Bellamy does not meet the criteria for compassionate release or a reduction in sentence.[6]

## I.  EXTRAORDINARY AND COMPELLING REASONS

The Court will find that extraordinary and compelling reasons exist to reduce Bellamy's sentence under the relevant Sentencing Commission's Policy Statement ("SC Statement").  The Bureau of Prison's Policy Statement ("BOP Statement") likewise supports a reduction in sentence.

The SC Statement can be found in section 1B1.13 of the United States Sentencing Guidelines ("USSG").  The statement outlines various criteria that constitute "extraordinary and compelling reasons."  *See* U.S.S.G. § 1B1.13, application notes.  The specific criteria relevant to Bellamy will be discussed below.

The SC Statement criteria loosely track the criteria set forth by the BOP Statement, although the BOP's criteria are more detailed.  *Compare id*. *with* BOP Policy Statement Program Statement 5050.50, Compassionate Release/Reduction in Sentence: Procedures for Implementation of 18 U.S.C. §§ 3582 and 4205(g) ("BOP Statement") at 4-10.  The SC Statement also provides that the Court may consider determinations by the Director of the BOP that there exist extraordinary and compelling reasons other than (or in combination with) the criteria set forth in the SC Statement.  U.S.S.G. § 1B1.13, application note 1(D).

---

[6] The United States does not dispute that Bellamy has exhausted his administrative rights.

Importantly, the SC Statement provides that "an extraordinary and compelling reason need not have been unforeseen at the time of sentencing in order to warrant a reduction in the term of imprisonment." *Id.* application note 2. However, "rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason." *Id.* application note 3. The SC Statement also recognizes that "[t]he court is in a unique position to determine whether the circumstances warrant a reduction (and, if so, the amount of reduction)." *Id.* application note 4.

Bellamy moves for a sentencing reduction on the grounds that he suffers from "debilitated medical conditions" and is an "elderly inmate with medical conditions." The Court will consider each ground in turn. The Court will find that Bellamy meets the criteria for a reduction in sentence based on his medical conditions but not based on his age.

### A.    Bellamy's Medical Conditions

Under the SC Statement, non-terminal medical conditions may constitute extraordinary and compelling reasons if (1) a defendant is "suffering from a serious physical or medical condition, . . . suffering from a serious functional or cognitive impairment, or . . . experiencing deteriorating physical or mental health because of the aging process"; (2) the defendant is not expected to recover from the health problem; and (3) the defendant's health problem "substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility." U.S.S.G. § 1B1.13, application note 1(A).

The BOP Statement provides that a defendant may be considered for a reduced sentence based on a debilitated medical condition if the defendant has an "incurable, progressive illness" or has "suffered a debilitating injury from which [he] will not recover." BOP Statement at 5.  The defendant must either be "[c]ompletely disabled, meaning the [defendant] cannot carry on any self-care and is being totally confined to a bed or chair," or be "[c]apable of only limited self-care and . . . confined to a bed or chair more than 50% of waking hours."  *Id.*

In considering Bellamy's request, the Court has carefully reviewed the documents submitted by Bellamy and his medical records, which were provided by the United States. Bellamy's medical history includes the following diagnoses:  acute combined systolic and diastolic ACC/AHA stage C congestive heart failure, atherosclerosis, diabetes mellitus Type 2, chronic diabetic kidney disease, hypertension, hyperlipidemia, esophageal reflux, sleep apnea, osteoarthritis, and asthma.  (Mot. Ex. A; Mot. Ex. B.)  The BOP's health services staff describe many of Bellamy's health problems as "chronic in nature and . . . directly related to and/or accelerated by the aging process."  (Mot. Ex. A.)

Bellamy claims that he needs assistance getting to the bathroom, taking a shower, getting dressed, making phone calls, using the computer, and "almost every single basic thing that [he] need[s] to do to complete a day."  (Mot. Ex. 8.)  He also claims that he is confined to a wheelchair or his bed for more than 50% of the time he is awake.  (Mot. Ex. D at 2, Jan. 8, 2019, Docket No. 2776-5.)  His claims are supported by his medical records.[7]

---

[7] Bellamy scored a two out of six on the BOP's Physical Self-Maintenance Scale and a three out of nine on the BOP's Instrumental Activities of Daily Living Scale.  (Medical Records

The United States' response to Bellamy's motion acknowledges that he uses a wheelchair "with the assistance of an inmate companion" but claims—without explanation or support—that Bellamy is "able to function sufficiently in a general population institution." (USA Mem. Opp. at 12, June 29, 2019, Docket No. 2867.)  This assertion is undermined by Bellamy's medical records.

Two BOP health services staff members, including the Clinical Director of FCI – Elkton, examined Bellamy in connection with his request for a reduced sentence.  (*See* Medical Records Part 6 at 76-83 (on file with the Court).)   While one staff member concluded that Bellamy did not have an incurable progressive illness or debilitating injury, the Clinical Director found that he did.  (*Id.* at 77, 81.)  Both staff members found that Bellamy was either "completely disabled, unable to perform activities of daily living and totally confined to a bed or chair OR . . . only capable of limited self-care and confined to a bed or chair more than 50% of waking hours." (*Id.*)  Both staff members also found that Bellamy is suffering "[f]rom a chronic or serious medical condition related to the aging process or . . . deteriorating physical (or mental) health that substantially diminishes his . . . ability to function in a correctional facility." (*Id.*)

Bellamy's medical records show that he needs assistance using the toilet, getting dressed, bathing, transferring to his wheelchair from his bed, using the computer, obtaining meals, doing laundry, and obtaining his medication, among other activities.  (*Id.* at 78-79; Medical Records Part 5 at 3, 62.)

---

Part 6 at 78-79 (on file with the Court).)  On both scales, "[a] lower score indicates a higher level of dependence." (*Id.*)

The Court finds that Bellamy's medical conditions meet the criteria for extraordinary and compelling reasons set forth in both the SC Statement and the BOP Statement. Bellamy has several serious chronic illnesses, is experiencing deteriorating health as a result of the aging process, is capable of only limited self-care, and is confined to his bed or wheelchair more than 50% of his waking hours. He is not expected to recover from most of his serious health problems, and his health problems substantially diminish his ability to provide self-care within a correctional facility. *See* U.S.S.G. § 1B1.13, application note 1(A).

The United States argues that Bellamy's medical condition has not changed since sentencing and that he should not receive a reduction in sentence based on medical conditions that were considered at sentencing. This argument fails for three reasons. First, the SC Statement indicates that extraordinary and compelling circumstances found by the Court on a motion for compassionate release "need not have been unforeseeable at the time of sentencing." U.S.S.G. § 1B1.13, application note 2. Thus, even assuming the SC Statement is binding, the Court may reconsider at this juncture the same conditions it considered at sentencing. Second, while some of Bellamy's medical problems were known to the Court at sentencing, they appear to be worsening. Review of Bellamy's medical records show that, since Bellamy began serving his sentence, he has been hospitalized at least four times with chest pain, possibly related to his congestive heart failure. (*See generally* Medical Records Parts 4-6.) In October 2017, his hospitalization lasted 11 days. (*See id.* Part 4 at 158, 190.) Bellamy also complains of worsening knee pain and worsening peripheral neuropathy. (*See id.* Part 5 at 13, Part 6 at 9.) Third, Bellamy has been

diagnosed with several new problems since his sentencing, including urinary incontinence, sleep apnea (requiring use of a C-Pap machine), and chronic rhinitis.  (*See id*. Part 5 at 132, 137.)  These new problems further diminish his ability to function and provide self-care in a correctional facility.

The Court finds that Bellamy's severe and worsening health problems are extraordinary and compelling reasons that justify compassionate release.

### B.      Bellamy's Age

Both the SC Statement and the BOP Statement set forth criteria warranting a reduction in sentence for inmates over a certain age.   Under the SC Statement, extraordinary and compelling reasons exist if a defendant "(i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less."  U.S.S.G. § 1B1.13, application note 1(B).  Under the BOP Statement, a defendant may be considered for a reduced sentence if the defendant is 65 years old or older, suffers from "chronic or serious medical conditions related to the aging process," is experiencing deteriorating health that substantially diminishes his or her ability to function in the correctional facility, is not likely to be helped by "[c]onventional treatment," and has served at least 50% of his or her sentence.  BOP Statement at 6.  The BOP also considers other criteria relating to the defendant's risk of reoffending.

Bellamy has clearly shown that he meets the medical considerations of these age-related criteria.  Indeed, both BOP health services staff members that reviewed Bellamy's

request for a reduction in sentence found that his health is seriously deteriorating because of the aging process and that his ability to function in a prison facility is substantially diminished as a result.

But Bellamy has not yet served 50%—much less 75%—of his sentence. Bellamy was sentenced to 60 months on June 30, 2017. The BOP reports his incarceration as beginning July 24, 2017, and lists his release date as November 15, 2021. Nevertheless, Bellamy is not far from reaching 50% of his sentence. Using the BOP's dates, the midpoint of Bellamy's sentence would be September 20, 2019, just two months from this writing. Calculating the midpoint of Bellamy's sentence as 30 months from his July 24, 2017, report date, Bellamy would reach the required 50% in about six months, on January 24, 2020.

Because Bellamy has not yet served a sufficient portion of his sentence under either the BOP or the SC Statement, the Court will not grant Bellamy's motion on this ground.

## II.    SENTENCING COMMISSION POLICY STATEMENT

Under the SC Policy Statement, a court considering compassionate release must also consider whether the defendant is a danger to the safety of any other person or to the community as defined in 18 U.S.C. § 3142(g). USSG § 1B1.13(2). The court must consider the following factors: (1) the nature and circumstances of the offense; (2) the weight of the evidence against the person; (3) the person's history and characteristics, including—among other things—the person's physical condition, family ties, community ties, past conduct, criminal history, record of appearance at court proceedings, and whether

the offense was committed while on probation or other supervised release; and (4) the nature and seriousness of the danger to any person or the community.  18 U.S.C. § 3142(g).

As to the first factor, the Court acknowledges that Bellamy's offense of conviction is serious.  He assisted his son in acquiring heroin, which was then distributed in Minnesota.  However, Bellamy was an average participant.  And, as the Court recognized at sentencing, Bellamy's son's "undue influence" contributed to Bellamy's criminal conduct.  (SOR at 4.)  Not only does this factor mitigate Bellamy's culpability, it also weighs against the likelihood of recidivism, as Bellamy's son is serving a 300-month sentence and is thus likely to remain incarcerated for the rest of Bellamy's life.[8]  Notably, the probation officer in this case did not recommend a guideline sentence, concluding that "a significant sentence in this matter appears unnecessary" given "the nature of [Bellamy's] specific conduct in this matter."  (Presentence Report Rec. Letter at 3, Apr. 12, 2017, Docket No. 2211.)  The probation officer also noted that, of the codefendants, Bellamy's role was most similar to that of his wife, although he was responsible for a larger quantity of drugs.  (*Id.* at 3-4.)  Bellamy's wife was sentenced to 12 months and 1 day in prison, a significantly shorter time period than that which Bellamy has already served.[9]

---

[8] *See Beck*, 2019 WL 2716505, at *11 ("[O]f the co-conspirators with whom [the defendant] most closely associated, the more culpable . . . are still incarcerated and will remain in prison for several more years.").

[9] The Court notes that Bellamy's wife has been released but sees little risk of recidivism related to their interaction.  The instigating force in the criminal conspiracy for which they were both convicted was their son, who is serving a 300-month sentence.

As to the second factor, there is no dispute that the evidence against Bellamy was strong, and he pled guilty to the offense.  But the Court also notes that Bellamy accepted responsibility for the offense and received a related adjustment.

As to the third factor, Bellamy's history and characteristics weigh both for and against relief.  Bellamy has a significant criminal history and committed the offense for which he is currently incarcerated while on supervised release, both of which weigh against release.  However, even the United States recognized at sentencing that Bellamy "should receive some benefit based on his criminal history" given that his career offender status was imposed in part based on a conviction that was almost 25 years old.  (USA Sentencing Mem. at 6, June 28, 2017, Docket No. 2385.)  The United States, like the probation officer, recommended a sentence well below the established guideline range.  (*Id.* at 1.)  Bellamy's physical condition, discussed in detail above, also weighs strongly in favor of release.  Furthermore, Bellamy has identified an updated release plan in his motion, indicating that he will reside with his wife at their residence.  (Mot. Ex. D at 2.)  He has also provided the names, addresses, and phone numbers of his daughter and in-laws, who he says will provide support and care as needed.  (*Id.*)  The Court finds that this release plan weighs in favor of release.  (*Id.*)  However, the Court will grant Bellamy's request for release with a delayed effective date to afford the probation office the opportunity to conduct another home inspection.  *See United States v. Johns*, No. CR 91-392, 2019 WL 2646663, at *4 (D. Ariz. June 27, 2019).

As to the fourth factor, the Court doubts that Bellamy presents a danger to any person or the community in his present state.  He is wheelchair-bound and requires

assistance to complete most of his daily activities.  Bellamy's son, who was the driving force in this offense, is unlikely to be released from prison during Bellamy's life.  While Bellamy does have a significant criminal history, most of his offenses are more than 28 years old, and all of his violent offenses are more than 28 years old.  (PSR ¶¶ 138-48.)  His most recent prior controlled substance offense is now more than 12 years old.  (*Id.*¶ 148.)  The age of his prior violent and controlled substance offenses combined with Bellamy's current physical condition leads the Court to conclude that he presents little risk of danger to any person or the community.  Any limited risk can be mitigated by supervision.

The seriousness of Bellamy's offense and criminal history "are wholly outweighed by [Bellamy's] serious, deteriorating conditions and dependence upon  . . . a wheelchair" and assistance from a helper.  *United States v. McGraw*, No. 2:02-CR-00018, 2019 WL 2059488, at *4 (S.D. Ind. May 9, 2019).  With appropriate supervision, the Court finds that Bellamy is not a danger to any person or the community.

## III.    OTHER SENTENCING FACTORS

The Court has also considered the remaining sentencing factors set forth in 18 U.S.C. § 3553(a) and finds that a reduction in Bellamy's term of imprisonment, with an increase in his term of supervised release, is sufficient but not greater than necessary under the circumstances.

Most of the relevant factors, including the nature and circumstances of the offense and the history and characteristics of the defendant, have already been discussed above.

Two important factors remain.  First, the Court considers "the need for the sentence imposed—(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; [and] (B) to afford adequate deterrence to criminal conduct. . . ."  18 U.S.C. § 3553(a)(2).  The Court finds that the sentence served, combined with an extended period of supervised release, sufficiently reflects the seriousness of his conduct, promotes respect for the law, provides just punishment, and affords adequate deterrence.  Bellamy has already served a significant portion of his sentence and has done so in extraordinary and compelling circumstances given his deteriorating health.  *See McGraw*, 2019 WL 2059488, at *5 (defendant's health issues made his sentence "significantly more laborious than that served by most inmates").  While shorter than expected, Bellamy's time in prison under these circumstances provides just punishment and adequate deterrence.

Second, the Court finds that a reduced sentence does not create "unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct."  18 U.S.C. § 3553(a)(6).  The sentence Bellamy has served thus far is substantially longer than the sentence received by his wife, a comparable participant in the offense.  While Bellamy's record warranted a longer sentence, any disparity resulting from a reduced sentence is not unwarranted given the special circumstances he faces in prison as a result of his health and age.  Any disparity will also be mitigated by an extended period of supervised release.

Because continued incarceration in Bellamy's condition would be greater than necessary to serve the purposes of 18 U.S.C. § 3553(a), the Court will grant his Motion.

## IV. SIMILAR CASES

Because the First Step Act is new, the Court does not have the benefit of robust precedent. However, the Court has considered similar cases decided since the passage of the First Step Act and finds that granting Bellamy's Motion is consistent with decisions of other courts. Bellamy is equally, if not more, deserving of compassionate release than other defendants who have been granted such relief.

The Middle District of North Carolina granted compassionate release for a defendant suffering from an invasive form of breast cancer who had received grossly inadequate treatment while serving her sentence. *Beck*, 2019 WL 2716505, at *7. She had been convicted of a drug distribution offense and possession of a firearm in furtherance of a drug trafficking crime, both committed after she had been arrested on similar state charges and released on bond. *Id.* at *1. Her original sentence of 189 months was later reduced to 165 months based on a retroactive sentencing guideline amendment. *Id.* She had served 76 months, less than 50% of her reduced sentence, when the court granted her release. *Id.* at *2.

The Southern District of Illinois granted compassionate release for a 72-year-old defendant who suffered from several medical problems similar to Bellamy's, although none as severe as chronic heart failure. *McGraw*, 2019 WL 2059488, at *2. Likewise, the District of Arizona granted compassionate release for an 81-year-old defendant suffering from severe heart disease, among other health problems. *Johns*, 2019 WL 2646663, at *2. While the defendants in these cases had served longer terms than Bellamy, both were facing life sentences for serious drug offenses. *Id.* at *1; *McGraw*, 2019 WL 2646663, at *5.

Courts that have denied similar motions have largely done so because the defendants failed to present sufficient evidence of serious medical problems. *See, e.g., United States v. Casey*, No. 1:06CR00071, 2019 WL 1987311, at *1 (W.D. Va. May 6, 2019); *United States v. Gutierrez*, No. CR 05-0217, 2019 WL 1472320 (D.N.M. Apr. 3, 2019), *reconsideration denied*, 2019 WL 2422601 (D.N.M. June 10, 2019). Indeed, the Court could not find a denial where a defendant's documented medical issues were as severe as those facing Bellamy.

## CONCLUSION

Pursuant to 18 U.S.C. § 3582(c), the Court finds that extraordinary and compelling reasons warrant a reduction of Bellamy's sentence, that Bellamy does not pose a danger to any other person or the community under the conditions of release, that the § 3553(a) factors support a reduction, and that the reduction is consistent with the Sentencing Commission's policy statements. The Court also finds that granting Bellamy's Motion is consistent with BOP Policy and with other courts' decisions in similar cases.

## ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1.      Defendant's Motion for Compassionate Release and Reduction in Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A) [Docket No. 2776] is **GRANTED;**

2.      Defendant's Request for Status Update Regarding Inmate Transfer [Docket No. 2864] is **DENIED as moot;**

3.      The Probation Office is ordered to relocate the Defendant's supervision to the Eastern District of Michigan;

4.      The Probation Office is ordered to conduct another home inspection of the home of Defendant and his wife, Brenda Fagan, and shall notify the Court no later than August 30, 2019, if the residence is not satisfactory to accommodate Bellamy's release;

5.      Defendant's sentence of imprisonment is reduced to time served effective August 31, 2019, and the BOP shall release Defendant on August 31, 2019, for placement with Brenda Fagan in Detroit, Michigan;

6.      Defendant's supervised release term shall begin upon his release and shall continue until November 15, 2025;

7.      Defendant is responsible for arranging his own transportation to his joint residence with Brenda Fagan;

8.      Defendant shall report in person to the U.S. Probation Office in the Eastern District of Michigan within 96 hours (4 days) of his release; and

9.      Defendant's conditions of supervised release, described in the Sentencing Judgment [Docket No. 2393], shall remain unchanged.


DATED: July 25, 2019                          _____
at Minneapolis, Minnesota.                              JOHN R. TUNHEIM
                                                          Chief Judge
                                              United States District Court

**Exhibit C**
**(Defense Position With Respect to Sentencing)**

UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
15-CR-165(08) (JRT/LIB)

UNITED STATES OF AMERICA,            )
                                     )
            Plaintiff,               )     **POSITION OF THE**
                                     )     **DEFENDANT WILLIE**
      v.                             )     **BELLAMY WITH RESPECT**
                                     )     **TO SENTENCING FACTORS**
WILLIE NMN BELLAMY JR,               )     **AND MOTION FOR**
                                     )     **DOWNWARD VARIANCE**
            Defendant.               )


## <u>INTRODUCTION</u>

Defendant Willie Bellamy, through undersigned counsel, hereby states his position with respect to sentencing factors and motion for downward variance.    Mr. Bellamy respectfully requests that the Court impose a sentence of 60 months.   While this is a significant variance from the advisory guideline range, it is appropriate given Mr. Bellamy's compelling arguments for downward variance.

In <u>Gall v. United States</u>, the Supreme Court noted that in <u>Booker</u> it had invalidated the statutory provisions which made the Sentencing Guidelines mandatory and which directed appellate courts to apply a de novo standard of review to departures from the Guidelines. "[A] district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range," but "may not presume that the Guideline range is reasonable."   <u>Gall v. United States</u>, 552 U.S. 38, 49-50, 128 S.Ct. 586, 596-97 (2007).   Instead, the Supreme Court has directed sentencing courts to consider all the factors enumerated in 18 U.S.C. § 3553(a), and then "make an individualized assessment based on the facts presented." *Id*.   Those factors are:

1

(1)     the nature and circumstances of the offense and the history and characteristics of

        the defendant;

(2)     the need for the sentence imposed-

        (A)     to reflect the seriousness of the offense, to promote respect for the law, and

                to provide just punishment for the offense:

        (B)     to afford adequate deterrence to criminal conduct;

        (C)     to protect the public from further crimes of the defendant; and

        (D)     to provide the defendant with needed educational or vocational training,

                medical care, or other correctional treatment in the most effective manner;

(3)     the kinds of sentences available;

(4)     the kinds of sentence and the sentencing range established [by the Sentencing

        Guidelines]

(5)     any pertinent policy statement...

(6)     the need to avoid unwanted sentence disparities...; and

(7)     the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

The Sentencing Guidelines "place essentially no limit on the potential factors that may

warrant a departure."   Koon v. United States, 518 U.S. 81, 106 (1996); see 18 U.S.C. §3661

(stating "no limitation shall be placed on the information" a court can receive and consider for

purposes of imposing an appropriate sentence).   "It has been uniform and constant in the federal

judicial tradition for the sentencing judge to consider every convicted person as an individual and

every case as a unique study in the human failings that sometimes mitigate, sometimes magnify,

2

the crime and the punishment to ensue." <u>Koon</u>, 518 U.S. at 113. Having considered all the relevant factors, the court is then charged with the task of imposing a sentence "sufficient, but not greater than necessary" to accompany the statutory purposes. 18 U.S.C.§ 3553(a).

## OFFENSE LEVEL CALCULATIONS

### CRIMINAL HISTORY CATEGORY

The total of Defendant's criminal history points is 9, but because of his status as a career offender, the applicable criminal history category is VI.

### OFFENSE LEVEL

The base offense level for a career offender is 34 which should be adjusted downward three levels for acceptance of responsibility resulting in an offense level of 31.

### GUIDELINE RANGE

The Court should find with an offense level of 31, and a criminal history category VI, that this would result in an advisory guideline range of 188 to 235 months.

### APPROPRIATE SENTENCE

The United States has agreed to request a sentence within the guideline range of 87 to 108 months. This is the guideline range which would have applied if career offender status was not applicable to Mr. Bellamy. Defendant respectfully requests that the Court sentence him to a sentence of 60 months. A sentence of 60 months is an appropriate sentence to provide an adequate deterrence and reflect the seriousness of the offense. Sufficient, but not greater than necessary.

Mr. Bellamy acknowledges that it was criminal to assist his son to locate a source from

which to purchase heroin. He has no one to blame but himself.    While not a defense, Mr.

Bellamy's son was in danger if he did not find a source of heroin. Mr. Bellamy did not want his son

to be seriously injured or possibly murdered so he helped him locate a source of heroin. Mr.

Bellamy's involvement in the offense was limited in both scope and duration.    Mr. Bellamy is 69

years old with multiple serious health complications.

      To accomplish the statutory purposes of 15 USC § 3553(a), the Defendant would request

the Court sentence him to 60 months. That is the statutory mandatory minimum and Mr. Bellamy

is certain to have a difficult time in prison given his advancing age and deteriorating health.

                                       MALACKO LAW OFFICE

Dated this 26th day of April, 2017.           *s/ Richard J. Malacko*
                                       Richard J. Malacko #184421
                                       Attorney for Defendant Bellamy
                                       7449 80th Street South
                                       P.O. Box 135
                                       Cottage Grove, MN 55016
                                       651 340-0488